J-S35003-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.C., A MINOR, :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
APPEAL OF: F.B., MOTHER :   No. 489 EDA 2019

Appeal from the Order Entered January 22, 2019
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002632-2018

IN THE INTEREST OF: K.C., A MINOR, :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
APPEAL OF: F.B., MOTHER :   No. 490 EDA 2019

Appeal from the Order Entered January 22, 2019
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002633-2018

IN THE INTEREST OF: I.C., A MINOR, :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
APPEAL OF: F.B., MOTHER :   No. 491 EDA 2019

Appeal from the Order Entered January 22, 2019
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002634-2018

BEFORE:   OLSON, J., STABILE, J. and STRASSBURGER, J.*

CONCURRING AND DISSENTING MEMORANDUM BY STRASSBURGER, J.:

**FILED OCTOBER 29, 2019**

I agree with the Majority that the trial court did not err by adjudicating

Children dependent and granting legal and physical custody of Children to

Father. However, I disagree with two aspects of the Majority memorandum,

and offer the following analysis.

*Retired Senior Judge assigned to the Superior Court.

First, with respect to the consideration of hearsay testimony, at issue is Ms. Tyrell's testimony about a December 10, 2018 report, where it was alleged that Mother hit Kb.C. with a cup. Counsel for Mother objected to this testimony as hearsay, and the trial court overruled that objection. The Majority declines to address the issue of whether the trial court improperly considered this testimony as substantive evidence, and concludes that even if this testimony were hearsay, Mother was not prejudiced.

I would conclude that this testimony was indeed hearsay, and that the trial court erred by considering it as substantive evidence. However, I agree with the Majority that Mother was not prejudiced.

On appeal, it is Mother's position that the trial court erred by overruling her objections, and permitting Ms. Tyrell to testify about a child abuse report alleging that Mother had struck Kb.C. with a cup. Mother's Brief at 16. Hearsay is an "out-of-court statement offered to prove the truth of the matter asserted." Pa.R.E. 801(comment). This report was clearly an out-of-court statement, and a review of the trial court's opinion reveals that the trial court utilized this evidence in support of its conclusion that Mother abused Child. **See** Trial Court Opinion, 3/15/2019, at 16 (relying on several pieces of evidence, including "the concerns identified in the Report of 12/10/2018, which alleged Mother had struck the Child with a cup."). In other words, the trial court considered this incident as substantive evidence of child abuse.

- 2 -

Nevertheless, I agree with the Majority that the admission of this hearsay did not prejudice Mother. The trial court had ample other non-hearsay evidence to establish child abuse by clear and convincing evidence. **See id**. Therefore, the trial court's consideration of this testimony was not reversible error, and I agree with the Majority that Mother is not entitled to relief on this issue.

I now consider whether the trial court erred by suspending Children's visitation with Mother. According to Mother, DHS did not establish that visits with Mother would result in "grave harm" to the Children. Mother's Brief at 15-16.

> Our standard of reviewing a juvenile court's visitation order depends on the child's goal. When reunification is contemplated, a juvenile court cannot deny or reduce visitation absent a "grave threat" to the dependent child. This standard underscores the importance of each parent's maintaining a meaningful and sustaining relationship with the child. In contrast, when the goal is an alternative to reunification, the juvenile court may limit or deny visitation as long as the reduction satisfies the best interest of the child. This alternative standard recognizes that when reunification is unlikely, the parent-child relationship is no longer paramount. We have indicated that "The 'best interests' standard, in this context, is less protective of parents' visitation rights than the 'grave threat' standard." **In re L.V.**, 127 A.3d 831 (Pa. Super. 2015).

**In Interest of L.T.**, 158 A.3d 1266, 1283 (Pa. Super. 2017) (some citations and internal quotation marks omitted).

Instantly, there is no dispute that the goal for Children is "return to parent or guardian." **See** Order (Kb.C.), 1/22/2019; Order (Ky.C.),

- 3 -

1/22/2019; Order (I.C.), 1/22/2019. Thus, the trial court was required to utilize the grave-threat standard in assessing visitation.

It is evident that the trial court was, at a minimum, confused with respect to the aforementioned standard. After Mother's courtroom outburst, the trial court stated, "visitation would not be in the best interest of [C]hildren at this point." N.T., 1/22/2019, at 37. In addition, in the orders adjudicating Children dependent, the trial court specifically stated that "[v]isitation with Mother is not in the Child's best interest." Order (Kb.C.), 1/22/2019; Order (Ky.C.), 1/22/2019; Order (I.C.), 1/22/2019. However, in its later-filed opinion, the trial court recognizes that the proper standard to consider is the aforementioned grave-threat standard. Trial Court Opinion, 3/15/2019, at 13. However, in that same opinion, the trial court concludes that "not allowing any contact between Mother and the Children was in the best interest of the Children." *Id*. at 19.

In order for the trial court not to order visitation, the trial court had to determine that Mother met the grave-threat standard.

> The "grave threat" standard is met when the evidence clearly shows that a parent is unfit to associate with his or her children; the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

*In re C.B.*, 861 A.2d 287, 293–94 (Pa. Super. 2004) (some citations and internal quotation marks omitted).

Our review of the trial court opinion does not reveal any analysis with respect to this standard, nor does the trial court discuss how Mother has demonstrated "a severe mental or moral deficiency." ***Id***.  To the extent the trial court was concerned about Mother's admission that she may cause harm to Children in the future, the trial court does not explain how **supervised** visitation, with appropriate security measures, would not alleviate that legitimate concern. ***See In re Mary Kathryn T.***, 629 A.2d 988, 995 (Pa. Super. 1993) ("Unless the state demonstrates with clear and convincing evidence that even supervised visitation would severely endanger the child, the court must deny the complete foreclosure of parental visitation as being contrary to the Act's goal of family preservation.").

At this juncture, Mother's goal is reunification with Children.  By considering the wrong standard and suspending visitation, the trial court erred.  This error may well result in much more than the denial of a visit or series of visits.  It ultimately can affect a custody determination or even the termination of parental rights.  A parent denied any visitation can be "behind the eight ball" for a child's entire minority.  Accordingly, I would remand this case to the trial court to order supervised visitation.